# Exhibit F

-

# Fisher Article

Case 1:06-cv-00814-EGS    Document 2-8    Filed 05/03/2006    Page 1 of 4

washingtonpost.com

# D.C. Tries to Fence In Homeowners' Free Expression

By Marc Fisher
Tuesday, April 4, 2006; B01

Advertisement

Advertisement

Stretch your legs between airports.
Learn more now
UNITED
Economy Plus

Ann Todd, like a dozen other homeowners within a few blocks of her house in American University Park, has a sign on her lawn supporting Adrian Fenty's campaign for mayor. The District government has not threatened to fine her $2,000, and it won't.

But five of Todd's neighbors on Ellicott Street NW face exactly that sanction because their lawn signs protest a plan by a newcomer to their block to split a lot and build a big house.

To the D.C. government, it's not how you say it, but what you're trying to say.

"Keep the Park in A.U. Park," reads one sign. Another: "Save A.U. Park. No McMansions."

Every resident who put up a sign to protest Chevy Chase real estate agent David Cai's subdivision of the lot he bought a few months ago has received a gift from the District: A violation notice and an order to remove the sign or pay a $2,000 penalty. The city says its building code allows campaign signs but not lawn signs expressing personal opinions.

The protest began after Cai bought a house in the 4700 block of Ellicott and quickly moved to sell it and, separately, a chunk of its yard. Total asking price: 50 percent more than the $900,000 he'd just paid.

Neighbors checked around and determined that Cai had persuaded the city to let him subdivide his new property so he could build a house next to the existing one.

Cai wouldn't talk to neighbors about his plans. So they decided to make their displeasure known.

The signs went up. Along came a D.C. inspector, saying that a neighbor had complained. Homeowners with the hand-lettered plywood protest signs got cited; those with mayoral campaign signs did not. "I've had a Fenty sign on the lawn for months, so why didn't I receive a citation?" asks Todd, who supports her neighbors' cause but doesn't have one of their signs.

But the good people of Ellicott Street are nothing if not law-abiding. They consulted lawyers and reminded the District that, as resident Andrew McBride wrote in a letter of appeal, "signs on residential property enjoy a special level of First Amendment protection."

From the start, the District seemed to offer an out. Residents should get permits for the signs, the inspector told the neighbors. So they trooped down to the bureaucratic labyrinth known as the Department of Consumer and Regulatory Affairs to seek permits.

Lynne Parenti spent 2 1/2 hours at DCRA. At first, bureaucrats tried to tell her she didn't need a permit to post a lawn sign. Then they said she did. When she tried to apply for a permit, she was told she needed a copy of her house's plat, a surveyor's map showing how the land is divided. The city was happy to provide the plat, for $30.

Parenti, a museum curator, bought the plat and completed the application. More than two weeks later, she's heard nothing. Similarly, those residents who asked for a hearing to appeal their citation have had no answer.

"The city doesn't know what to do," says McBride, a federal worker who has no plans to remove his sign. "There's nothing personal on the signs; the language is clean. We wanted to make our protest known, and the city turned it into a free-speech issue. What surprises me is the level of incompetence."

Cai, who says he buys houses and then flips them for profit, won't talk about his plans for the property: "Maybe I move in. I don't know."

Neighbors invited Cai to meet with them, have a drink together. Cai declined. "I don't have time to come over," he tells me. "I don't have to tell them what I do. They do what they want, and I do what I want."

Cai says he doesn't care what the neighbors say on their signs.

But the District, which in recent years has been only too happy to write laws allowing giant billboards to be slapped on downtown buildings, does care.

"The signs in their yards don't comport with the building code," says DCRA spokesman Linda Argo.

The code allows campaign signs, and if you're having your house renovated, the contractor may put a big advertising sign on your lawn. But if you, the owner, have a message to send, go buy a bumper sticker.

"That's the code," Argo says. "We just enforce it."

There will be no permits.

But if the neighbors added "Fenty for Mayor" to their signs, would they be okay then?

"I don't think so," Argo says. "It's mixing messages."

"I can't believe it," says Tina Ramoy, a law librarian who lives with Parenti. "This is informational speech. There's nothing offensive. This neighborhood is very tight. We're just trying to protect the place we live in, and the District comes after us. But I still love living in the District."

What a town.

E-mail:*marcfisher@washpost.com*

© 2006 The Washington Post Company

Ads by Google

**Need a Building Permit?**
Total Building Permit Services- Get approvals on time! DC/MD/VA

www.dc-permits.com

**Washington Dc Hotel**
Reviews, Great Rates & Deals on Washington DC Hotels
www.HotelSuperPortal.com

**Washington DC Hotels**
Get Our Best Price Guarantee on Hotels in Washington DC at Expedia.
www.Expedia.com