# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| LINDA GUSTITUS, ET AL., ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 1:06-cv-00814-EGS |
| ANTHONY WILLIAMS, ET AL. ) | |
| Defendants. ) | |

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

After repeated attempts to enforce a blatantly unconstitutional law and indifference to overtures designed to avoid litigation,[1] the District has fled from any substantive defense of the challenged laws' constitutionality. It now claims—incredibly—that this case is moot because it decided to prosecute plaintiffs "in error." (*See* Def.'s Opposition to Mot. for Prelim. Inj. at 2, 5 [hereinafter "Opposition"].) The District's brazen and unsustainable claim misapprehends both the nature of plaintiffs' ("the neighbors") complaint and First Amendment injury. The neighbors not only object to the application of the permit scheme—

---

[1] *See* Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 8 n. 7 (describing steps taken by counsel prior to filing this suit); *id.* at 3-8 (describing multiple contacts between the District and the plaintiffs—all of which conveyed the District's message that their signs must be taken down).

they object to its very *existence*. (*See* Compl. at 9.) *See also Weigand v. Village of Tinley Park,* 129 F. Supp. 2d 1170, 1172-73 (N.D. Ill. 2001) (rejecting mootness claim despite repeal of constitutionally deficient statute); *see also, e.g.,* Pl.'s Mem. of Pts. and Author. in Supp. of Mot. for Prelim. Inj. at 17, 26-28 [hereinafter "Memo in Support"] (arguing that the Building Code is facially unconstitutional). The District is asking this Court to create a precedent allowing it to continue violating First Amendment rights with impunity, and it has done so through a series of demonstrably incorrect assertions regarding the substance of the neighbors' claims and a procedurally defective statement that binds neither the declarant to its truthfulness nor the District to its substance. Its mootness argument is meritless, and the neighbors' motion for a preliminary injunction should be granted.

## I.     Plaintiff Todd Is Suffering An Ongoing Injury

The injury in this case is ongoing. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury where the injury is both threatened and occurring at the time of plaintiff's motion for a preliminary injunction." *People for the Ethical Treatment of Animals v. Gittens*, 215 F. Supp. 2d 120, 134 (D.D.C. 2002) (citing *Elrod v. Burns*, 427 U.S. 347, 374 (1976)) (internal citation and quotation omitted). In addition to those neighbors who continue to be threatened with both civil and criminal penalties for posting their signs, the affidavit of Ms. Todd, whose speech

has been and continues to be chilled by the District's unconstitutional laws, presents an ongoing First Amendment injury sufficient to confer federal court jurisdiction in this case, even were she the sole plaintiff.[2]  *See Eldred v. Reno*, 239 F.3d 372, 375 (D.C. Cir. 2001) (rejecting government's challenge to standing where they allege that they have been prevented from engaging in First Amendment activity in reproducing the copyrighted works of others), *aff'd on other grounds, Eldred v. Ashcroft*, 537 U.S. 186 (2003).  Mr. Janifer's declaration and purported administrative action does not and cannot remedy the ongoing injury to the neighbors' constitutional rights.

## II.     A Live Controversy Exists in this Case

This case presents a live controversy.  "A case is not to be dismissed as moot if the defendant voluntarily ceases the allegedly improper behavior but is free to return to it at any time."  Erwin Chemerinsky, Federal Jurisdiction § 2.5.4, at 136 (2d ed. 1994).  The District's voluntary cessation of a challenged practice neither deprives a federal court of its power to determine the legality of that practice nor its power to enjoin it.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-190 (2000).  If it did, the courts would be compelled to leave "the defendant . . . free to return to his old ways."  *Id.* At 189 (internal citation and quotation omitted) (citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).  Moreover, "it is the duty of the courts to beware of

---

[2]     It is telling that the District does not discuss Ms. Todd at all, save in one footnote. (Opposition at 3 n.1)

3

efforts to defeat injunctive relieve by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *W.T. Grant,* 345 U.S. at 632 n. 5 (interal citation omitted). "The 'heavy burden of persuading' the court that "the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Laidlaw,* 528 U.S. at 189. The District has not come remotely close to meeting that burden. Before turning to the substantive defects of the Janifer Declaration, however, the neighbors feel compelled to point out an important defect in its form.

### A.     *The Janifer Declaration Is Not Properly Sworn*

The Declaration of David Janifer contains a technical but crucial deficiency in that it violates Local Rules 65.1(c) and 5.1(h) (2). Local Rule 65.1(c) states that "the opposition… [to a motion for preliminary injunction] shall be accompanied by all *affidavits* on which the defendant intends to rely." LCvR 65.1(c) (emphasis added). Local Rule 5.1(h), which tracks the language of 28 U.S.C. § 1746, states, in relevant part:

> "Whenever any matter is required or permitted by law or by rule to be supported by the sworn written statement of a person (other than a deposition, oath of office, or oath required to be taken before a specified official other than a notary public), the matter may, with the same force and effect, be supported by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed as true under penalty of perjury, and dated, in substantially the following form: …
>
> > (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under

4

> penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

Here, the *first* line of the Declaration states that "I, David Janifer pursuant to 28 U.S.C. 1746, declare under the penalty of perjury that the **foregoing** is true and correct." (Janifer Decl. at 1 (emphasis added).) Foregoing means "That goes or has gone before; preceding, previously mentioned."[3] As literally read, none of the Declaration's eight paragraphs are sworn under penalty of perjury, and as a result the declaration fails to bind Mr. Janifer to its truthfulness. This is more than a mere technical defect. It goes to the very heart of the District's claim of mootness. The District would have this Court dismiss for want of *jurisdiction* the neighbors' entire case based on Mr. Janifer's declared unlikelihood of enforcement.[4] The rules do not require the neighbors to bear the risk of whether he is telling the truth.

---

[3]    1 The New Shorter Oxford English Dictionary 1001 (4th Ed. 1993). *See also* www.dictionary.com (visited 14 May 2006) (defining "foregoing" as "To precede, as in time or place.").

[4]    When read in conjunction with his unsworn declaration, Mr. Janifer's correspondence is uncomfortably ambiguous as to whether the District has technically rescinded the NOVs. First, in paragraph 4 of his declaration, Mr. Janifer states that the Notices "indicate that plaintiffs Gustitus, McBride, Parentis [sic], and Ramoy had violated 24 D.C.M.R. § 108." (Janifer Decl. ¶ 4). There are two problems with this statement. First, 24 D.C.M.R. § 108 does not contain (and is not subject to) a permit requirement. *See id.* (*See* also Memo in Support at 31 & n. 27 (describing section 108).) Second, the NOVs in this case cite 12 D.C.M.R.§ 105.1.8, which incorporates section 12 D.C.M.R. § 3107 by reference. (*See, e.g.,* Complaint ¶ 26; Gustitus Aff. Attach. 2 (citing 12 D.C.M.R. § 105.1.8); Ramoy Aff. Attach. 2 (same); McBride Aff. Attach. 2 (same).) By rescinding NOVs that cite 24 D.C.M.R. § 108, he has arguably rescinded nothing. The reason that 24 D.C.M.R. § 108 is cited in this case at all is due to the bizarre statement by DCRA to the press that section 108 affects residential signage. (*See* Memo in Support at 31 & n. 27; Ex. F to Memo in Support.)  Finally, Mr. Janifer only avers that the Acting Director *directed* that these NOV's be rescinded, not that they actually had been. (Janifer Decl. ¶ 7.) Based on the defects in both the form and substance of its Exhibits, the District has not unequivocally foresworn its intent to enforce the disputed provisions.

### B.   *Naked Promises Cannot Moot First Amendment Lawsuits*

Even were the declaration properly sworn, however, jurisdiction would still exist.  The neighbors could find no case remotely suggesting that a declaration by a mid-level administrative bureaucrat moots a First Amendment claim for injunctive or declaratory relief, and the District does not cite one.  For example, in *National Black Police Association v. District of Columbia,* 108 F.3d 346 (D.C. Cir. 1997), the District *passed ameliorative legislation* that mooted the plaintiffs' challenge.  *See id.* at 347-48.  Similarly, in *Fraternal Order of Police v. Rubin,* 134 F. Supp. 2d 39, 40-41 (D.D.C. 2001), the plaintiffs attacked a *specific* internal policy of the Secret Service, which the agency repealed and had the authority to repeal.  *See id.* at 41 & n. 1.  Had the plaintiffs attacked the general power of the Secret Service to institute a policy that chilled the plaintiff's First Amendment rights, the case would *not* have been moot.  *Id.* at 43. Other than *Flast v. Cohen,* 392 U.S. 83, 103-105 (1968), which *excepted* First Amendment claims from the general rule against taxpayer standing, the other cases cited by the District either in fact do not support their argument, or have nothing whatsoever to do with the speech interests at issue in this case.[5]  Indeed, even *repeal* of an

---

[5]  *See, e.g., Powell v. McCormack,* 395 U.S. 486, 498-99 (1969) (finding that congressman's claim for back salary arising out of wrongful removal from office was not moot despite his re-election); *Church of Scientology of California v. United States,* 506 U.S. 9, 13-14 (1992) (order to produce certain tapes not moot despite production of tapes because of any *possible* remedy, and mootness would impermissibly preclude appellate review); *Bd. of School Commissioners v. City of Indianapolis,* 420 U.S. 128, 129 (1975) (mootness found *only* because plaintiff high school students had graduated and were no longer subject to relevant policy, and case had not been properly certified as class action); *United States Parole Comm'n v. Gerahty*, 445 U.S. 388, 404 n. 11 (1980) (holding that challenge to parole standards not moot despite named class plaintiff's release because class certification improperly denied); *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (case moot where prisoner transferred *in absence of any controlling regulation* or policy, then returned to original prison with note in file protecting him from any

ordinance does not necessarily moot a First Amendment case and prohibit the issuance of an injunction.  *See, e.g., Weigland,* 129 F. Supp. 2d at 1172-73; *see also City of Mesquite v. Aladdin's Castle,* 455 U.S. 283, 289-90 (1982).

No such repeal has taken place here, nor does Mr. Janifer have the authority to set agency policy.  *See, e.g.,* D.C. Code §§ 6-1409 (prescribing process of amendment); 6-1405.01 (granting authority and duty to enforce to the Mayor).  Indeed, according to his Declaration, Mr. Janifer rescinded the Notices of Violation "at the *direction* of the Acting Deputy Director of DCRA for Inspections and Compliance." (Janifer Decl. ¶ 6. (emphasis added); Opposition Ex. B at 1.)  The Acting Director (much less the Director of the DRCA, the Mayor, or the Attorney General) is not bound by Mr. Janifer's statement as to *any* of the neighbors, and the District impermissibly would remain free to commence enforcement against the neighbors once the case is dismissed.  *Cf. Laidlaw,* 527 U.S. at 190 (noting that citywide moratorium on allegedly illegal chokehold would not moot claim for injunctive relief).

---

adverse inference due to transfer); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 923 (D.C. Cir. 1958) (involving order denying intervention in proceeding pertaining to the local distribution of natural gas); *United States v. Weston*, 194 F.3d 145, 148-49 (D.C. Cir. 1999) (noting that court order to submit to psychiatrist would be reviewable either via collateral order doctrine or, if the collateral order doctrine did not apply, on appeal); *Barry v. Washington Post Co.*, 529 A.2d 319, 322-23 (D.C. Ct. App. 1987) (stay of delivery of responsive FOIA documents regarding Mayor Barry's security detail not granted because Mayor not likely to prevail on the merits); *Wieck v. Sterenbuch,* 350 A.2d 384, 386 (D.C. Ct. App. 1976) (adverse possession dispute); *In re Antioch University,* 418 A.2d 105, 106 (D.C. Ct. App. 1980) (contractual relinquishment of control of university funds).

### 1. The District's Confession of Administrative Error is Irrelevant to Jurisdiction

The District has attempted to avoid the imposition of an injunction by the statement that the NOVs were issued "in error," and "were never intended to prohibit signs that express views on controversial issues or that support a particular candidate, parties or causes – and those regulations at issue will not be enforced against plaintiffs *as they relate to protest signs* that they may choose to display on their residential properties." (Memo in Opposition at 6; *see also* Janifer Decl. ¶ 8; Opposition Ex. B at 1.)

Mr. Janifer's protestations are irrelevant. Plaintiffs have alleged that the district lacks *the power* to prohibit or require permits for *any* residential signs under its existing regulations, irrespective of their content, and the neighbors by no means concede that the District has any power to selectively enforce its regulations against those yard signs that it thinks relate to "protests." (*See* Compl. at 9, 13; Memo in Support at 11-13.) *See also Ladue v. City of Gilleo,* 512 U.S. 43, 59 (1994) (invalidating content-neutral ban on signs in residential areas); *Linmark Assoc. v. Township of Willingboro,* 431 U.S. 85, 94-95 (1977) (invalidating ban on real estate advertising on private property, even when ban designed to advance substantial interest of racial integration).

This lawsuit contends that the District lacks the constitutional power to determine what a "protest" sign is. The "requested relief" (Opposition at 5) in this case therefore has nothing whatsoever to do with the District's specific *decision* to prosecute the neighbors for signage of any kind, but its inherent ability

8

to do so, and the presence or absence of that ability in a variety of contexts lies at the heart of this litigation. The purpose of the preliminary injunction is to prevent the District from unlawfully exercising that power, and to enable Ms. Todd, the other neighbors, and all others similarly situated to display their signs without fear of prosecution. Only this Court can provide that relief.

### 2. The Presence of Facially Unconstitutional Statutes Creates a Justiciable Dispute

The District's mootnesss challenge to the complaint also ignores a litany of Supreme Court precedent that is directly at odds with its position. For example, a facial attack on the discretion granted a decision-maker is not dependent on the facts surrounding any particular permit decision. *See Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755-56 (1988) (also collecting cases). "It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). "Proof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemnination of ideal." *Id.* "Recognizing the explicit protection accorded speech and the press in the text of the First Amendment, our cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *Lakewood,* 486 U.S. at 755-56. If the Supreme Court allows First Amendment

plaintiffs that have either not applied for permits, or who have alleged that their speech has been silenced to obtain declaratory and injunctive relief invalidating entire statutory schemes, the District cannot escape preliminary or other relief via a mid-level officials' pledge not to enforce the offending statute.

This case involves both a facial and an applied attack on the enforcement of several provisions of 12 D.C.M.R. § 3107 on several grounds, a point that both the complaint and the Memorandum in Support make abundantly clear.  (*See, e.g.*, Compl. at 9 ("Count 1: For a Declaration that 12 D.C.M.R. § 3107 and 24 D.C.M.R. § 108 Violate the First Amendment on their Face"); *id.* ¶ 48 ("The availability of a permit under 12 D.C.M.R. § 3107 is subject to the standardless discretion of the Department of Consumer and Regulatory Affairs of the District of Columbia.").  The regulations' effect on residential speech is clear on their face. *See, e.g.,* 12 D.C.M.R. § 3107.9.1 (requiring all signs in residential areas to receive permits); 12 D.C.M.R.  § 3107.3.1 (all signs more than one square foot require permits).  Their very *existence* offends the First Amendment, and presents a live dispute.  Accordingly, the success of the neighbors' challenge on the grounds that an ordinance delegates overly broad discretion to the decision-maker (as 12 D.C.M.R. §§ 3107.6.7 and 3107.9.5.1 do), as well as the content discrimination present in the provisions themselves (see Memo. in Supp. at 29-30) rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the relevant provisions preventing him from doing so.  *See Lakewood,* 486 U.S. at 769-770.  Still vulnerable to

future enforcement of the provisions in question are the remainder of District residents who are not party to this suit and may, despite Mr. Janifer's statements, find themselves at the receiving end of civil and criminal proceedings when they seek to assert their First Amendment rights by placing expressive signs on their residential property. The neighbors have alleged that those provisions are facially defective (see Compl. ¶¶ 48-50), and those allegations create a controversy as a matter of law.

### B. The District's Alleged Repentance Has Been Manufactured for Purposes of Litigation

To put it mildly, the District's recent "protestations of repentance and reform, … seemed timed to anticipate suit." *W.T. Grant,* 345 U.S. at 632 n. 5. Mr. Janifer's letter to counsel, for example, is dated May 11th—*after* suit was filed and the same day its response to the motion for preliminary injunction was initially due. (*See* Consent Mot. for Extension of Time (May 9, 2006); Opposition Ex. B at 1.) None of the evidence offered by the District remotely suggests that there was any kind of "error" made, much less any concession that these regulations are unconstitutional. Especially telling is the fact that there is no explanation of the nature of the so-called "error" either in Mr. Janifer's May 11th declaration or the accompanying letter.

The District's newfound humility stands in stark contrast to the manner in which it acted *prior* to the institution of this lawsuit. Before being forced to justify its actions in this Court, the District sent an inspector out to Ellicott street on multiple occasions, and different District agents told the plaintiffs (and the

11

public) either that such signs needed permits or else they were illegal. (*See* Gustitus Aff. ¶ 11-18; Parenti Aff. ¶ 7; Ramoy Aff. ¶ 9; Ex. F to Memo in Support (quoting DCRA spokesperson).) Pre-litigation overtures by the neighbors' counsel to DCRA asking that enforcement be stayed were rebuffed by DCRA, and DCRA never responded to the neighbors' written requests for hearings. (See Memo in Support at 8 n.7 (detailing counsel's interaction with the District); *cf.* Gustitus Aff. ¶ 21 (stating that Ms. Gustitus received a blank permit application with no explanation of what she was supposed to do); see also Ex. F (noting that neighbors had received no response to requests for hearings, that the DCRA believed the signs were illegal, and reflecting the DCRA's concern over "mixed messages").) The controversy over the District's power to enact and enforce the signage regulations in this case is very much alive, and the neighbors urge this Court to rebuff the District's transparent attempt to "game" this Court's jurisdiction.

**II. None of the Exceptions to the Mootness Doctrine Apply**

Even making the unwarranted assumption that the mootness doctrine applied to this case, the exceptions to the doctrine would preserve this Court's jurisidiction. First, this case is capable of repetition but evading review. Second, even were the injunctive portion of this case denied, this court would retain jurisdiction over the declaratory aspects.

### A. *This Case is Capable of Repetition*

The District has incompletely stated the law on the application of the "capable of repetition but evading review" exception to the mootness doctrine. In its brief, it argues that "Repetition is unlikely because the challenged action would be DCRA's enforcement of municipal regulations at issue against plaintiffs in the future." (Opposition at 5.) The Supreme Court has made clear, however, that the application of the decision is whether "the controversy was *capable* of repetition and not … whether the claimant has demonstrated that a recurrence of the dispute is more likely than not." *Honig v. Doe,* 484 U.S. 305, 318-19 n.6 (1988) (emphasis in original); *see also FOP,* 134 F. Supp. 2d at 43. In *Christian Knights of the Klu Klux Klan Invisible Empire v. District of Columbia,* 972 F.2d 365, 370 (D.C. Cir. 1992), the D.C. Circuit refused to apply the "capable of repetition" exception to resolve a challenge to a parade permit after the parade had already occurred, and even though the plaintiff had already received everything it asked for in the complaint. *Id. Christian Knights* did not involve a facial challenge, nor did the plaintiff in that case ever state that it would be marching again. *See id.* This case, in contrast, involves several facial challenges to the District's legislation. (*See* Compl. at 9, 13; *see also* Memo in Support at 18-20, 26-28, Compl. at 9.)

The simplest application of this principle involves those whose speech, like that of Ms. Todd, has been chilled. Her injury (and that of others muzzled by these invalid laws) occurred when she was *silenced*, and continues to this day.

*See NAACP v. Button,* 371 U.S. 415, 432-33 (1963) (noting that the threat of sanctions may deter speech almost as potently as their application). Should Ms. Todd desire to place a sign up on her yard that is not a protest sign, she may choose not to because of the presence of an unconstitutional law and permit requirement. Under the District's proposed resolution of this case, the second she asks for judicial review, the case becomes moot because the city flees once suit commences and the appellate courts never review her injury. Federal jurisdiction is not so anemic.

### B. The Declaratory Portion of this Case Remains Live

Finally, even assuming that the "capable of repetition" exception to mootness does not apply, another doctrine preserves this court's jurisdiction. The petitioners here have sought, from the very beginning, *declaratory* relief as well as an injunction. The Supreme Court has unequivocally directed that the courts have a "duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 121 (1974); *see also Christian Knights*, 972 F.2d at 270. Here, the neighbors have sought to obtain a declaration on the constitutionality of a variety of the District's laws. Its mootness argument fails for this reason as well.

### III. Conclusion

For all the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.

                                                            Respectfully submitted,

On: May 19, 2006             By: _____/s/_____
                                                       Christopher A. Mohr
                                                       D.C. Bar No.  458599
                                                       Michael R. Klipper
                                                       D.C. Bar No.  166074

                                                       Meyer, Klipper & Mohr, PLLC
                                                       923 Fifteenth Street, NW
                                                       Washington, D.C. 20005
                                                       Voice: 202-637-0850
                                                       Fax: 202-637-0851