UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LINDA GUSTITUS, *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 1:06CV814 (RCL) |
| | : | |
| ANTHONY WILLIAMS, et. al., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## REPLY BRIEF TO PLAINTIFFS' MOTION CHALLENGING DEFENDANTS' EMERGENCY RULEMAKING IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

### Preliminary Statement

Ironically, in an apparent effort to shore up their motion for a preliminary injunction prohibiting the District of Columbia Department of Consumer and Regulatory Affairs from enforcing certain municipal regulations, plaintiffs challenge the legality of defendants' emergency rulemaking, which was drafted to clarify the issue plaintiffs complain of.[1]  The Department of Consumer and Regulatory Affairs ("DCRA") expeditiously promulgated emergency rulemaking, not only on this Court's recommendation, but to clarify and remove any real or perceived obstacles to posting signs of an ideological or expressive character on residential property.[2]

---

[1]      Plaintiffs take issue with Title 12 D.C.M.R. §§ 3107.3, 3107.6.6.3, 3107.9.5.1, 3107.6.7 and Title 24 D.C.M.R § 108.

[2]      The emergency rulemaking states in pertinent part that Section 3107 does not apply to "non-commercial statements of fact, belief, or personal or political opinion posted on private property."

Nonetheless, the emergency rulemaking was not necessary to render plaintiffs'
motion for a preliminary injunction moot, but was further evidence of
representations defendants have already made – that the notices plaintiffs
received were issued in error, that these notices have been rescinded, and that
the regulations will not be enforced against plaintiffs as they relate to signs of an
ideological or expressive character posted on their residential properties.

In any event, plaintiffs' challenge to the emergency rulemaking does not
lend support to their motion for a preliminary injunction because: (1) plaintiffs
lack standing to challenge the emergency rulemaking; (2) exclusive jurisdiction
for plaintiffs' challenge lies with the D.C. Court of Appeals; and (3) D.C. Official
Code § 6-1409 does not preclude emergency rulemaking when serious matters
affecting the public's health, safety, or welfare are at issue.

<u>Argument</u>

**I. Plaintiffs do not have Standing to Challenge the Emergency Rulemaking.**

"A plaintiff who challenges a statute must demonstrate a realistic danger
of sustaining a direct injury as a result of the statute's operation or enforcement."
*Babbitt* v. *Farm Workers*, 442 U.S. 289, 298 (1979) (citations and internal
quotations omitted). Implementation of the emergency rulemaking here does
not pose "a realistic danger of [plaintiffs] sustaining a direct injury." *Id.*

Indeed, plaintiffs will not suffer a direct injury regardless of whether the
emergency rulemaking is effective for 120 days or they are found to be
procedurally infirm. This is true because the municipal regulations at issue were
never intended to apply to signs of an ideological or expressive character posted

on residential property and, this case presents the only instance in which they were.

For a plaintiff to have standing it is well established that "[a]bstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."[3] *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (citations and internal quotation marks omitted).

In the instant case, defendants have represented that: (1) the notices stating that plaintiffs needed permits before posting signs of an ideological or expressive character on their residential properties were issued in error; (2) since the posting of the signs, plaintiffs have not been served a Notice of Infraction, were not fined or prosecuted in any forum, and on information and belief, their signs remain posted and intact; (3) the notices issued to plaintiffs were rescinded and inspectors at the DCRA were admonished by the Chief Building Inspector for the District and the Deputy Director of DCRA that the regulations at issue are not applicable to signs of an ideological or expressive character posted on residential properties. These representations made in court, by letter and declaration, and through representations of counsel, give plaintiffs more than sufficient notice that

---

[3]     Plaintiffs' submission to the Court contains a lengthy discussion regarding the constitutionality of the regulations at issue. Defendants have already represented to the Court, that the DCRA in conjunction with the Office of the Attorney General, Legal Counsel Division, is working on a more comprehensive amendment (that will preserve the clarification set forth in the emergency rule) that will be submitted to the District Council for comment and review. In any event, plaintiffs do not create *irreparable injury or real and imminent harm* by arguing hypothetically. Should this case proceed to the next stage, defendants will address the merits according to this Court's Orders.

enforcement of the regulations at issue will not occur and that they are not in danger of sustaining some direct injury.[4]

Furthermore, to have standing, plaintiffs must allege a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972); *See also Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) ("The Constitution requires a concrete and particularized injury.")[5]  Here, plaintiffs speculate that the regulations as written (with or without the emergency rulemaking) might lead to censorship of signs that are both ideological and "commercial" in the sense that they seek to raise funds for a cause, and provide examples of such (Pl. Br. at 15).  But this is an academic discussion of future injury; not a specific and concrete injury sufficient to confer standing. A plaintiff will not have standing if a court must accept a speculative inference or assumption to link the alleged injury to the challenged action. *National Maritime Union v. Commander, Military Sealift Command*, 824 F.2d" 1228, 1234 (D.C.Cir.1987); *See also Whitmore v. Arkansas*, 495 U.S. 149, 158 ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (*quoting Babbitt v.   Farm Workers*, 442 U.S. at 298).

---

[4] There is also, therefore, no need to enjoin defendants from doing that which they have clearly and unequivocally represented they will not do, regardless of the status of the emergency rulemaking.

[5]  Separation of powers principles underlie the concept of standing, and reflect that courts should not prematurely interfere "with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely. Accordingly, the courts should never 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Field*, 610 F.2d at 990 (*quoting Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 72 (1961).

Since plaintiffs cannot show that there is a *substantial probability of actual or imminent injury* from the challenged emergency rulemaking, they do not have standing to challenge that rulemaking here.

**II. The judicial review provision in the District of Columbia's Administrative Procedures Act places exclusive jurisdiction in the D.C. Court of Appeals.**

The District of Columbia Administrative Procedure Act's judicial review provision places exclusive jurisdiction to review District agency actions in the D.C. Court of Appeals.  *See Fair Care Found v. Dep't of Ins. And Sec. Reg.*, 716 A. 2d 987, 997 (D.C. 1998).  Plaintiffs here have brought an action pursuant to 42 U.S.C. § 1983.  A federal district court hearing such an action, "does not have comparable authority; it cannot for instance, remand a case to a state agency, thereby acting in something of a supervisory capacity."  *Lightfoot, et al. v. District of Columbia, et al.* _____ F.3d _____, 2006 WL 1389559, (No. 05-7028,  May 23, 2006) Slip. Op. at 11-12;  *see also  Robinson v. Palmer*, 841 F.2d 1151, 1157 (D.C. Cir. 1988) (it was appropriate for the district court to refuse to decide a DCAPA claim that a District Agency failed to comply with notice-and-comment rulemaking requirements).  Likewise, this Court need not and should not consider the propriety of defendants' emergency rulemaking in the instant case.

**III. D.C. Official Code § 6-1409 does not limit the Mayor's power to issue emergency rulemaking pursuant  D.C. Official Code § 2-505.**

Plaintiffs argue that there is no authority for an emergency rulemaking in the instant case, and therefore, a preliminary injunction is further warranted. Since plaintiffs lack standing and any challenge to the procedural propriety of the emergency rulemaking lies with the D.C. Court Appeals, this Court need not

reach a decision on that issue here.  Nonetheless, defendants will briefly address plaintiffs' arguments.

First, plaintiffs' analysis is flawed by failing to distinguish emergency rulemaking from proposed rules.  Plaintiffs argue that D.C. Official Code § 6-1409 reflects the Council's intent to limit the Mayor's authority to issue *only* proposed rules that are subject to notice and comment and a 45 day period of Council review.  Plaintiffs claim that the language: "The Mayor may issue *proposed* rules to amend the Construction Codes and to adopt new supplements and editions of the Model Codes in whole or in part pursuant to subchapter I of Chapter 5 of Title 2," means that the Council declined to authorize the Mayor to exercise emergency rulemaking authority regardless of public health, safety and welfare.

Defendants disagree.  Since "proposed rule" is a term of art under District law, *see* section 6 of the District of Columbia Administrative Procedure Act ("DCAPA"), approved October 21, 1968, Pub. L. 90-614, D.C. Official Code § 2-505 (2001), the term, of necessity, must be construed not to include the discrete and separate term, "emergency rule."  While it is possible to read the inclusion of the word "proposed" in the statute this way, applying the maxim *expressio unius est exclusio alterius*  to preclude a grant of emergency rulemaking authority, the statute does not expressly address the issue of emergency rulemaking and taken in context, the statutory language does not require this result.

As the D.C. Circuit noted in *Shook v. District of Columbia Financial Responsibility and Management Assistance Authority*, 132 F.3d 775, 782 (D.C. 1998), this maxim is only a starting point in statutory construction and evaluation of the statute's structure and legislative history is useful in determining whether

the drafters intended to exclude unexpressed alternatives.  Indeed, the *expressio
unius* maxim, if relevant at all, should be applied only to the subject of proposed
rulemakings – confirming that § 6-1409 establishes the exclusive procedure for
their adoption – and not to the subject of emergency rulemakings, as to which
the statute establishes no procedure at all.

Additionally, there are a number of factors that support defendants'
position that that the Council did not intend to limit the Mayor's authority to
propose emergency rules.  The Council historically has used varying language
to authorize rulemakings requiring Council approval, including language
containing broad general authorizations combined with specific references to
procedures for Council approval of proposed rules.  *See e.g.*  D.C. Official Code §
8-101.06 (conferring broad rulemaking authority for air pollution controls while
requiring the submission of proposed rules to the Council for review); D.C. Official
Code § 34-1206 (broadly authorizing rulemaking relating to cable
television while requiring Council approval of rules by resolution).  The use of
differing language has not generally been construed to contradict the Council's
longstanding practice of providing the Mayor with broad rulemaking powers and
of not restricting the Mayor's ability to take time-limited rulemaking action in
emergencies. [6]  From a practical perspective, this is a sensible approach.
Requiring the Mayor to seek and to obtain an emergency act at one of the
Council's monthly legislative sessions or to wait up to 45 days for the Council's
approval of proposed rules, following a committee hearing, before addressing

---

[6]      Plaintiffs undermine their motion for a preliminary injunction by arguing their case does
not constitute an "emergency" (Pl. Br. at 10).

serious matters affecting the public health, safety or welfare does not serve the public interest, particularly when any emergency solution the Mayor implements immediately by rulemaking is necessarily limited to 120 days.

Absent a more specific manifestation of legislative intent, it would be incongruous to construe § 6-1409 in this manner, in light of: (1) consistent Council support for emergency mayoral rulemaking whenever the Council has authorized proposed mayoral rulemaking; and (2) the resulting gap in authority whereby neither the Mayor, nor the Council would be able to amend the Construction Codes on an emergency basis.

The most reasonable interpretation of § 6-1409 is that the Council intended the Mayor to have emergency rulemaking authority to amend the Construction Codes.  Additional support for this proposition can be found in the opening sentence of § 6-1409(a), which states, "All future amendments, supplements, and editions of the Construction Codes shall be adopted only upon authority of the government of the District of Columbia."  This provision is self-evident and unnecessary unless it intends to convey some further idea regarding the existence of rulemaking authority in the District government.  Since the Construction Codes are a form of rule, and since rulemaking is inherently both an executive and a legislative function, the quoted provision can reasonably be interpreted as recognizing the existence of authority in both the Mayor and the Council to engage in rulemaking – emergency and proposed – with respect to the Construction Codes.  (The second sentence of §.6-1409(a) sets forth the additional requirement for proposed rulemaking by the Mayor that does not appear in the DCAPA.)

Further, the Council's interest in approving proposed permanent changes to District policies and practices is not inconsistent with the Mayor's exercise of emergency rulemaking authority over a subject matter about which the Council has authorized him to act.  Such a construction is also consistent with section 422 of the District of Columbia Home Rule Act, approved December 24, 1973, Pub. L. 93-198, 87 Stat. 810, D.C. Official Code § 1-204.22, which provides the Mayor with inherent authority to issue rules to address emergencies as part of the executive power and his responsibility for the proper execution of the laws and the proper administration of the affairs of the District.

Finally, whether the Construction Codes were initiated by the Mayor or the Council is not determinative of whether the accompanying procedure for Council approval of proposed mayoral rulemaking precludes *emergency* mayoral rulemaking.  As compared with other rules, the Construction Codes contain nothing special that warrants prohibiting emergency mayoral amendments.  If § 6-1409 is construed narrowly to only authorize proposed rulemaking, without cause neither the Mayor nor the Council will be able to make any emergency amendment to the Codes except by act.

Simply put, plaintiffs do not recognize the distinction between emergency rules and proposed rules.  By not recognizing this distinction, plaintiffs argue that the singular exclusion of proposed rules relating to Gallery Place signage (§ 6-1409(a-1)) from the Council approval process is evidence that the Council did not intend to authorize emergency rulemaking.  This argument is wrong; both the the review requirement and the Gallery Place exclusion apply to proposed rules and the statute simply does not address emergency rulemaking.

## Conclusion

Plaintiffs lack standing to challenge the District's emergency rulemaking. Even if they had standing, D.C. Official Code § 6-1409 does not limit the Mayor's power to issue emergency rulemaking here.  At any rate, for the foregoing reasons, and those set forth in defendants' other filings, plaintiffs' motion for a preliminary injunction should be denied.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

s/Richard S. Love
RICHARD S. LOVE [340455]
Chief, Equity I

s/Martha J. Mullen
MARTHA J. MULLEN [419036]
Senior Counsel, Equity I
Office of the Attorney General
for the District of Columbia
441 Fourth Street, NW
Sixth Floor South
Washington, D.C.  20001
(202) 724-6612

**Filed:  June 19, 2006**