IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LINDA GUSTITUS, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.  1:06-cv-00814-EGS |
| ) | |
| ANTHONY WILLIAMS, ET AL., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION**

The parties' respective interests—the District's, in retaining the broadest possible power to regulate signage—and the neighbors', in exercising their First Amendment rights—are classically adverse and ripe for judicial resolution.  As of this writing, no filing of the District, or remark at oral argument, has attempted to defend the constitutionality of its signage provisions.  Indeed, the experience of the neighbors in trying to obtain permits from the DCRA illustrates the very evils that the First Amendment is designed to prevent.  (*See, e.g.*, Gustitus Aff. ¶ 18 (describing a discussion in which a DCRA employee determined that the neighbors' signs are not covered by the "public information" sign regulation).) The importance of free speech interests renders likelihood of success on the

merits the overwhelming factor in determining whether or not to issue a preliminary injunction in a First Amendment case. (*See* Pls.' Mot. for Prelim. Inj. at 13-14.) The District's attempt to divert this Court's attention from the merits of the neighbors' constitutionally-based claim is unavailing.

In its supplemental filing, the District gives five reasons regarding the mootness of this case: (1) the alleged effect of the illegal and facially unconstitutional emergency ruling, which the neighbors have addressed in their last filing; (2) the fact that the District never served the neighbors with a Notice of Infraction (NOI); (3) counsel's representation that DCRA inspectors have been admonished not to issue citations for signs of an "ideological or expressive character"; (4) an assertion that this is not a class action; and (5) the District's counsel's representations to the Court that the District will not enforce the sign regulations against these plaintiffs. (Defs.' Supplemental Opp'n to Pls.' Mot. for a Prelim. Inj. at 1.) Missing from this document is a single citation to any legal authority supporting this position.[1]

---

[1] Even if the rulemaking were valid and constitutional, this case would not be moot. Section 6-1409(b) provides that revisions to the Building Code, when made by its private author, must be presented to the Council within six months. After 45 days, those changes become law unless the Council revokes part of the suggested changes. D.C. Code § 6-1409(a). Therefore, whether or not this case occurs again depends in part on the whims of the Building Code's private authors, who do not have to defend the constitutionality of these enactments. *Cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1981) (holding that the city's repeal of an unconstitutional ordinance did not moot the case because "[t]here is no certainty that a similar course would not be pursued if [the city's] most recent amendment were effective to defeat federal jurisdiction.").

The problems with the District's position on jurisdiction are discussed at length in Plaintiff's Reply to the District's initial Opposition to their motion for a Preliminary Injunction, and they will not reprise those arguments here.  The District, however, has raised two new issues in its written submissions:  the issuance of Notices of Infractions, and a defect in the neighbors' standing as "class plaintiffs."  Like the other reasons for mootness, these two assertions are legally irrelevant to this Court's jurisdiction.  This case remains in the exact same place that it was at this Court's very first status hearing.

I.      **Standing Requirements Are Relaxed in First Amendment Cases**

The District's suggestion that their voluntary cessation precludes the plaintiffs from raising the rights of others ignores black letter law on facial overbreadth.  The Supreme Court has consistently permitted "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity."  *Bigelow v. Virginia,* 421 U.S. 809, 815-16 (1975).  Such laws or regulations cause First Amendment injury by virtue of their very existence, and that injury is ongoing.  Even if the neighbors had not been cited, had not gone down to DCRA for hours to try to make their signs legal, and the city had made no statements about "mixed messages" (*see* Ex. F), the neighbors could challenge the permit scheme.  *E.g.*, *Lakewood v. Plain Dealer Publ'g. Co.*, 486 U.S. 750, 755-56 (1988) ("our cases have long held that when a licensing

3

statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license"). In short, the District's mootness argument is specious.

As applied, moreover, mootness is an exception to the standing doctrine, and a defendant cannot moot either the declaratory or the injunctive aspects of a case through voluntary cessation of illegal conduct. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193-94 (2000) (holding that defendants' closure of the plant causing the pollution at issue did not moot plaintiffs' claims for declaratory and injunctive relief because the closure did not "[make] it absolutely clear that Laidlaw's permit violations could not reasonably be expected to recur"); *Aladdin's Castle*, 455 U.S. at 289 (holding that plaintiffs' claim for an injunction against enforcement of unconstitutional ordinance was not mooted by the repeal of the ordinance because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision"). The neighbors have no interest in consigning their First Amendment rights to the same bureaucracy that has been indifferent to their First Amendment rights in the past. Prior to the initiation of this suit, in addition to repeated in-person and telephone communications between the neighbors and a DCRA inspector, the DCRA also rejected *pre-litigation* overtures from the neighbors' counsel designed to address the problems with the Building Code and other sign regulations. In an email on April 6, 2006, the District refused counsel's request to

meet with plaintiffs' counsel to discuss the unconstitutionality of the ordinance, to forswear enforcement against the neighbors (at least until that meeting), and to work with the neighbors towards repeal.[2]

Counsel's representations to this Court are not evidence, and do not bind the District.[3] Those representations to the Court (as well-intentioned as they may be) do nothing to militate against the chilling effect of the District's Building Code, either on its face or as applied to the neighbors or other District residents. In addition, the only time that the failure to certify this suit as a class action would be relevant is if the named plaintiffs were no longer "subject" to the law. *See Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 128-30 (1975).

## II.   Defendants' Lack of Further Prosecution and Lack of Service of a Notice of Infraction Are Irrelevant

The District claims that it never had any intention of prosecuting the neighbors, demonstrated by the fact no NOI (Notice of Infraction) was issued. Its supplemental filing states that "[t]he relief sought *remains moot* because: . . . (2) since the posting of the signs, plaintiffs have not been served a Notice of Infraction, were not prosecuted in any forum or fined, and on information and belief, their signs remain posted and intact." (Defs.' Supplemental Opp'n to Pls.' Mot. for a Prelim. Inj. at 1.) This argument is misleading for two reasons. First,

---

[2] The neighbors' overtures regarding a consent decree have been rebuffed.
[3] The procedural defect in the Janifer Declaration, for example, remains uncorrected.

the District's conduct prior to the start of this litigation evinced a clear intent to enforce the law.  (*See* Gustitus Aff. ¶¶ 6-21; McBride Aff. ¶¶ 6-8; Parenti Aff. ¶¶ 6-8; Ramoy Aff. ¶¶ 6-9.)[4]

Second, the District puts far too much weight on the lack of prosecution. The D.C. Code states that defendants may not proceed with enforcing penalties for code violations if the recipient of a Notice of Violation has requested a "show cause" hearing, and the D.C. Court of Appeals has held that due process requires that the government must either grant or refuse such a hearing, if one is requested. D.C. Code § 42-3131.01(a); *Auger v. D.C. Bd. of Appeals & Review*, 477 A.2d 196, 209 (D.C. 1984).  Here, *every cited neighbor requested a hearing*, but none of them have received a response to their request.  (Gustitus Aff. ¶ 8 & Attach. 3; McBride Aff. ¶ 8 & Attach. 3; Parenti Aff. ¶ 8 & Attach. 3; Ramoy Aff. ¶ 8 & Attach. 3.)

The Building Code contains mandatory enforcement language:  "The code official *shall* enforce the provisions of this code."  12 D.C.M.R. § 104.1 (emphasis added); *see, e.g.*, *Parrish v. District of Columbia*, 718 A.2d 133, 136 (D.C. 1998) ("It is well established that the word 'shall' is a term which creates a duty, not an option.") (internal quotation omitted).  Under this mandatory enforcement language, the DCRA does not have the discretion to refrain from enforcing the Building Code against the neighbors.  If the court dismissed this

---

[4] No such communication occurred here despite the passage of almost a month between the time those hearings were requested and the filing of this lawsuit.  Indeed it bears noting that when asked to stay the NOV's, counsel for DCRA refused to do so.

6

case, the day after the suit ends, the DCRA is directed to enforce the Building Code and, absent an injunction, is empowered to do so. This renders the dispute *capable* of repetition, but yet, the District evades review simply through the naked representations of its lawyers.

Moreover, a live controversy exists because the neighbors are technically accruing additional violations daily. The Building Code provides that every day of continued violation constitutes a separate violation. 12 D.C.M.R. § 113.4 ("Each day a violation continues shall be deemed a separate offense."); 12 D.C.M.R. § 102.6.1 (same). In addition, the Building Code also provides that every day (beyond the time specified in the Notice of Violation) that the neighbors go without correcting the violation constitutes a separate violation of the Building Code. 12 D.C.M.R. § 113.7 ("Should the owner fail to correct the condition as ordered and within the time frame established by the order . . . each day thereafter the violation goes unabated shall be considered a separate offense."). The effect of these provisions is that the neighbors are breaking the law anew every day that their signs remain in their yards. Therefore, defendants cannot assert that the neighbors' claims are moot—the moment this case is dismissed, the live controversy in this case is renewed and the chilling effect of the regulations continues unabated. A new Mayor, for example, or Director of the DCRA would be able to enforce these vague and overbroad regulations as he or she saw fit. The neighbors are not required to have their speech continue under a cloud of liability.

Respectfully submitted,

On: _____June 20th, 2006_____         By: _____/s/_____
                                                                                Christopher A. Mohr
                                                                                D.C. Bar No. 458599
                                                                                Michael R. Klipper
                                                                                D.C. Bar No. 166074

                                                                                Meyer, Klipper & Mohr, PLLC
                                                                                923 Fifteenth Street, NW
                                                                                Washington, DC  20005
                                                                                Voice:  202-637-0850
                                                                                Fax:  202-637-0851